And take up the next case, which is Angioletti v. Chao. You're Mr. Wade, is that right? Yes, I am, Your Honor. My name is Loxley Wade. I'm here for Ms. Angioletti. Ms. Angioletti, she was an employee with the Maritime Academy. She began her employment back in 2009. She worked in the chapel. She worked there for several years. What happened is that she was a term employee, and there was a time when she had to renew for permanent employment. She made a request to the administrators at the academy, but for some reason she was, or she alleges that she was turned over. She was denied that opportunity based on the fact that she's a woman and that she is over the age of 40. The case went to trial, and the court below clearly relied on lay testimony. They relied on lay testimony as to ultimate decisions of law. I know that there was an objection to the witnesses. I think there were three. But was the objection, the nature of the objection, that this is impermissible lay testimony, or is it this wasn't disclosed to us early enough? It was both. It wasn't disclosed to us, and the fact is that one of the witnesses was there solely to testify about what the law is. In his decision, Judge Wexler, or rather the trial court, referred to these witnesses, referred to their testimony. The court relied on their testimony to tell them what the ultimate decision should be, and that's not something that's permissible. You won't find it in any case law. Judges simply don't do that. They don't rely on a lay person to tell them what the law is. Isn't the issue rather what the decision makers thought the law was? In other words, if they did not give her the job because they believed that they could not, consistent with the various regulations, why isn't that evidentiary that is appropriately testified to and then relied on by the court on the question of whether this was based on age and sex or on something else? These witnesses were not fact witness. They were not at the academy. They did not witness what happened. They were brought in to testify solely on what the law is and what they thought the decision should have been. I thought one of them was Venkursami. Wasn't he at the academy? Wasn't he in HR in the academy? Yes. Because his testimony was he doesn't know Ms. Angioletti, and he doesn't know the facts of the case. He testified as to what he thought the regulation was, and this is what the decision should have been. By the way, are you contending that that evidence was incorrect? Yes, I am. Matter of fact, I'm contending that Venkursami should not have testified at all as to what the decision should have been based on his experience as to what the regulations are. What we put forward was that the regulations were being used as a pretext, as an excuse to discriminate against Ms. Angioletti based on her age and gender. It had nothing to do with the regulations themselves. As a matter of fact, that was the case. But there was testimony, was there not, that it was based on that kind of determination? There was testimony from Venkursami that it was based on what he believed could have been the regulations. And there was testimony from Ms. Norris. And, in fact, during the testimony of Ms. Norris, there was an attempt to introduce a regulation, a law. With the other person, Ms. Wolverston, she just testified purely on law. Breyer. Yes. But if we're looking to the question of prejudice, your position is that the judge should not have relied on this account of what the regulations say. It would seem to me that even if that were correct as a proposition of evidence law, it would only be prejudicial to your case if, in fact, the evidence that the judge And had he looked at the regulations, he would have found exactly what these witnesses said, then I'm not sure I understand how there was prejudice from any error in relying on this testimony. Well, perhaps it would have been different if the judge had actually said that he looked at the applied facts to the law, which a normal court would do. But in this case, he said he relied on their testimony. But yes, but the question is, are you maintaining, have you said to us, shown us anything that suggests that, in fact, what these witnesses said the regulations were was incorrect? One of the witnesses, one of the testimony from one of the witnesses was that there is room for discretion and that the ultimate decision-maker had some discretion in what he can do. Instead, what we have is the witnesses all testifying that the ultimate decision-maker had absolutely no discretion on what the law was. This is a very straightforward case. There's not much argument there is about what the judge below did. He simply took these witnesses' testimony on what the law is at face value and made his decision based on their testimony. And that's not something that the rules of evidence or any case law would allow. If the court has no further questions, I'll reserve my time for rebuttal. All right. We'll give you some rebuttal then. And Ms. Leonardo. Good morning. May it please the Court. My name is Diane Leonardo, and I'm an assistant United States attorney for the Eastern District of New York. Just two quick points I need to correct that Counsel mentioned. He described the plaintiff's employment as a temporary employee that needed to be renewed for her public employment. That's not the record is pretty clear that's not what occurred. The plaintiff was given a term appointment, and it's in the record with regard to what happened with a funding source that can no longer be used by the Federal Government, and all jobs had to be competitively put out to be competitively bid. It's a long, complicated process. But that's what occurred because of the change in the way the job was structured. Correct. She never was a Federal competitive service employee. And any time an agency uses congressionally appropriated funds, they have to comply with competitive service. Right. And the issue that Mr. Wade is raising is whether the judge inappropriately relied on testimony, whether lay or expert, about law, matters of law, that the judge should have determined for himself, apparently. I think that's the argument. I believe so, Your Honor. Your Honor, I believe, though, of the three witnesses who testified, most of their testimony was based in fact. They were not non-fact witnesses. In fact, Mr. Venkersamy, who was at the Academy at the time, knew the plaintiff, was acquainted with her, had spoken to her about her job prospects and about applying. The other two witnesses, one was within the Department of Merit, which is overseas the Academy, and she was fully familiar. That was Ms. Norris. She was fully familiar with the process and what was going on at the Academy at the time. And the other witness, Ms. Wolverton, she was — again, it's a complicated process. The Academy uses their — as their hiring agent, they go through the Federal Highways Department. And she was within that department and actually developed the list, the certificate of eligible list, for this position. So they were fact witnesses, too? Is that what you're saying is — and how this happened is — how did this process actually develop? Yes, they were fact — For that — for the appointment of these new Federal employees. Is that what you're saying? Yes, they were fact witnesses, Your Honor. And I believe, as the Court indicated earlier, there was no objection to this. But they did testify about how it works, because it's hard to figure it out. It's very hard to figure out, Your Honor. I will note that during the course of the trial, counsel introduced into evidence one of the departmental merit system protection — merit system hiring handbooks. We also introduced into evidence the Department of Transportation's hiring handbook with regard to external hires. There were no objections to either of those documents coming in. Much of the witness's testimonies is found within those documents. There was another witness, Mr. — Captain Walaszczuk, who testified also with regard to many of these situations with regard to the hiring, with regard to the lists and things like that. And many — Did I correct that Walaszczuk made the final decision himself? Is that right? He does make the final decision as the hiring official, and I do need to correct that also. He testified at trial that he has discretion only with regard to who is on the list. He cannot — and there was much, much testimony about it — he cannot go off the list. And because of the veteran's preference, the plaintiff did not make the list. And were all the people on the list veterans? They were all veterans, Your Honor. And in fact, most of them, I believe, were disabled veterans, and the individual who got the job was a disabled female veteran. And on that — even on that list, there were seven males and three females, and Captain Walaszczuk picked a female. So there really was no — there's no showing of any kind of gender discrimination. In addition, during the course of the trial, Plaintiff's counsel asked — And the gender discrimination claim is the only one on which there was a right to a jury trial. That's correct. That's correct. But there was actually — and as the Court is aware, the Court granted the government's Rule 50 motion because there was absolutely zero evidence of any kind of gender discrimination. Even in oral argument on the Rule 50 motion, counsel was hard-pressed to come up with any examples of gender discrimination. And I did just want to point out that during the course of the trial, counsel asked each of these witnesses questions with regard to the rules and regulations. There were questions to Mr. Venkersamy about, well, what — what rule is that? Where can I find that rule? Where is that law? Asked many, many questions and hypothetical questions to Ms. Norris with regard to, well, if they can't — if this plaintiff can't be hired under these circumstances, how can she be hired? There were many, many questions with regard to how the process works. Unless the Court has any specific questions, we will rely on our brief and ask that the Court affirm the district court's decision. Thank you. You're all set. Thank you. And, Mr. Wade, you've reserved a couple of minutes. Yes. Throughout this case, the government only presented one fact witness as to what happened between 2009 and 2011. The witness's testimony was solely that I went by the law. For those years, the appellant was asking to be reinstated. The testimony was he had all kinds of excuses as to — after four — or, rather, five years, as to why she could not be hired. And ultimately, none of these other witnesses, Vakosamy, Woolverton, or Norris, were actually fact witnesses. Is there any place in the record that we will find any evidence that what these witnesses said, that is to say that the list had to be composed according to a principle that gave preference to veterans? Is there any evidence in the record that that is inaccurate? Yes, there is. Tell me where that is. That would be in the policy manual of the Maritime Academy. There was a section where the decisionmaker has discretion. Has discretion from the list, was the argument of the government. Is there evidence that that is inaccurate, that there's discretion with respect to the makeup of the list or discretion to go off the list? There is discretion to go off the list. It's within their same — Tell me where I will find that in the policy manual. I don't know the exact page, but it's in the policy manual that was introduced in evidence. And was it called — was that specifically — is there some place I can find in your briefing below or in anything that was said to the judge what page it's on, that  I'm — no, I'm not sure that it's — It's somewhere — if I read the whole manual, I might find something. It is — it is in the appendix. Okay. And it also tells you that the ultimate decisionmaker can make a decision based on the mission, on what they decide that the mission is. They can go off the list and they can pick people that are — that are not on the list. Thank you, Your Honor. Okay. Thank you, Mr. Waite. We'll reserve decision on this case. Our next case is on submission, so I'll ask the clerk to adjourn court. Court is adjourned.